# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————————

Nº 09-CV-1306 (JFB) (ETB)

———————————————

ZHENGFANG LIANG,

Plaintiff,

VERSUS

CAFÉ SPICE SB, INC., D/B/A JASMINE &
MR. VINEET KAPOOR,

Defendants.

———————————

**MEMORANDUM AND ORDER**
November 29, 2012

———————————

JOSEPH F. BIANCO, District Judge:

Zenghfang Liang ("Liang" or "plaintiff") brought this action against Café Spice SB, Inc., d/b/a/ Jasmine ("Jasmine") and the general manager of Jasmine, Vineet Kapoor ("Kapoor") (collectively, "defendants"), alleging violations of Liang's rights pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the Fair Labor Standards Act ("FLSA"), the Equal Pay Act ("EPA"), the New York State Human Rights Law ("NYSHRL"), and New York state common law claims of negligent and intentional infliction of emotional distress.

Specifically, plaintiff alleges that Jasmine violated her rights under the EPA, Title VII, the NYSHRL, and Section 1981 by paying her less than it paid both male employees and employees of other races and national origins for similar work. Plaintiff also alleges that Jasmine violated the EPA, Title VII, the NYSHRL, Section 1981, and the FLSA by denying her overtime pay on the basis of her gender, race, and national origin. Plaintiff further alleges that Jasmine violated the EPA, Title VII, the NYSHRL, Section 1981, and the FLSA by creating a hostile work environment, including condoning sexual harassment and firing plaintiff in retaliation for attempting to exercise her rights under those laws. As to Jasmine's alleged violations of Section 1981 and the NYSHRL, plaintiff claims that Kapoor should be held individually liable.

Plaintiff also alleges that Jasmine violated the FLSA by paying her less than the New York State minimum hourly wage. Finally, plaintiff alleges that Jasmine both negligently and intentionally inflicted emotional distress on her in retaliation for her complaints.

1

Defendants now move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on all of plaintiff's claims.  Plaintiff also moves for sanctions against defendants. For the reasons set forth below, the Court (1) grants defendants' motion for summary judgment with respect to the majority of plaintiff's claims, but denies summary judgment with respect to plaintiff's FLSA unpaid wages claim and plaintiff's retaliatory failure to re-hire claim; and (2) denies plaintiff's motion for sanctions.

## I. BACKGROUND

### A. Factual Background

The Court has taken the facts set forth below from the parties' depositions, affidavits, exhibits, and respective Rule 56.1 Statements of Facts.[1]  Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party.  *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005).  Unless otherwise noted, where a party's 56.1 statement is cited, that fact is undisputed or the opposing party has not pointed to any evidence in the record to contradict it.[2]

### 1. Plaintiff's Employment at Jasmine

On August 22, 2005, Jasmine hired plaintiff as a full-time dishwasher. (Defs.' 56.1 ¶ 13, July 13, 2010, ECF No. 17-4.) Plaintiff claims that she was told she would be paid $400 per week. (Affidavit of Zhengfang Liang ("Zhengfang Aff.") ¶ 10, Aug. 24, 2011, ECF No. 67-1.) Plaintiff was paid $375 per week until May 14, 2006, the end of the 2006 spring semester. (Defs.' 56.1 ¶¶ 13-14.)

Plaintiff's husband, Fuhua Yu, was the dishwasher at Jasmine prior to plaintiff's employment. (*Id.* ¶ 11.) He was paid $400 per week in July 2005. (*Id.*) Rajesh Bhardwaj, the Chief Operating Officer of Jasmine, claims that Yu was not a dishwasher, but a prep cook responsible for washing and cutting vegetables. (Bhardwaj Affidavit ("Bhardwaj Aff.") ¶ 38, Sept. 9, 2011, ECF No. 77.) According to Bhardwaj, Yu simply performed extra dishwashing duties in the absence of a full-time dishwasher, prior to plaintiff's employment, and as compensation for his dishwashing work, Jasmine paid Yu an additional $25 over and above his $375 per week prep cook salary.  (*Id.*) Bhardwaj claims that Yu's dishwashing duties ceased once plaintiff was hired as a full-time dishwasher, and, as a

---

[1] Instead of filing an opposition to defendants' 56.1 statement, plaintiff filed an opposition to defense counsel's affidavit (and also included a statement of additional material facts to which plaintiff contends there exists a genuine issue to be tried). Generally, a party's "'failure to respond or contest the facts set forth by the [moving party] in [its] Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed.'" *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04-CV-2935 (ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 25, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Accordingly, in the exercise of its broad discretion and given plaintiff's *pro se* status, the Court will overlook this defect and will deem admitted only those facts in defendants' Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy*, 292 F. Supp. 2d at 504.

[2] In addition, although the parties' Rule 56.1 statements contain specific citations to the record to support their statements, the Court cites to the Rule 56.1 statements, rather than to the underlying citations to the record.

result, Yu stopped receiving the additional $25 per week. (*Id.*)

Yu states that he began working at Jasmine in August 2005 as a dishwasher, (Fuhua Yu Affidavit ("Yu Aff.") ¶ 3, Sept. 8, 2010, ECF No. 22-3), and that he was paid $400 per week until plaintiff was hired, at which point his salary was reduced to $375 per week to work as a "cook helper," (*id.* ¶¶ 5-6; Defs.' Ex. J, Zhengfang Liang Deposition Transcript ("Zhengfang Dep.") at 28, July 13, 2010, ECF No. 18-4.) At her deposition, plaintiff testified that when she started working as a dishwasher, her "husband was responsible for preparing the food, the raw materials." (Zhengfang Dep. at 28.) Yu ceased working at Jasmine by November 13, 2005. (Defs.' 56.1 ¶ 12.)

Plaintiff states that, from approximately August 2005 to May 2006, she worked from 11:00 a.m. to 9:00 p.m. Monday to Friday, and from 1:00 p.m. to 9:00 p.m. on Saturday. (Zhengfang Aff. ¶ 12.) She was paid $375 per week during that time period, through May 14, 2006, the end of the 2006 spring semester. (Defs.' 56.1 ¶ 13.) Plaintiff's salary rose to $400 per week at the start of the 2006 fall semester. (Defs.' 56.1 ¶ 15.) Plaintiff claims that she continued to work fifty-eight hours per week from October 2006 through March 2007. (Zhengfang Aff. ¶ 19.)

### 2. Plaintiff's Concerns Regarding Pay

Plaintiff asserts that, in December 2005, "a Hispanic co-worker" saw plaintiff's paycheck and informed plaintiff that she was receiving the lowest pay of all Jasmine employees. (*Id.* ¶ 16.) Plaintiff further asserts that said co-worker showed plaintiff his payment for that week, which included a check for $400 and an additional cash payment of $60. (*Id.*) With the help of Mr. Quan, a Chinese cook at Jasmine, plaintiff

asserts that she complained to Williams, a manager at Jasmine, about the fact that she was not receiving the $400 per week she had been promised, and that she never received a cash payment in addition to her weekly paycheck. [3] (*Id.* ¶ 17.) Plaintiff claims that Williams inquired with Kapoor, and was told that plaintiff would receive an increase in pay the next semester. (*Id.*) Plaintiff did not begin receiving a $400 per week paycheck until October 2006. (*Id.* ¶ 18.)

Plaintiff states that, in November 2006, she learned that all Jasmine employees, with the exception of her husband and herself, received a cash payment in addition to their paychecks. (*Id.* ¶ 21.) Upon learning this information, plaintiff asserts that she complained to Kapoor directly, and that he promised her $105 in cash in addition to her $400 paycheck each week. (*Id.*) According to plaintiff, she received an additional $105 in cash each week in December 2006, but she did not receive the cash payment in January 2007. (*Id.* ¶ 22.)

Plaintiff states that she approached Williams on three occasions in February 2007 to complain about no longer receiving the cash payment. (*Id.* ¶ 23.) According to plaintiff, Williams twice told plaintiff that he would respond to her the next day, but on the third occasion, he "was angry and loudly spoke" to plaintiff. (*Id.*) Plaintiff claims that, on this third occasion, Williams informed plaintiff that she would never receive the cash payment. Plaintiff also claims that Kapoor came over and told her that

---

[3] In her affidavit, plaintiff refers to a "Mr. Andy Williams ("Williams"), a manager at Jasmine." (Zhengfang Aff. ¶ 8.) The Court notes, however, that plaintiff seems to indicate at her deposition that "Andy" and "William" are separate people, (Zhengfang Dep. at 26), and that defendants identify "William" as Qingwei Quan, a chef at Jasmine, and "Andy" as Arun Viswanathan, an assistant manager at Jasmine, (Defs.' 56.1 ¶ 27).

"[n]othing [Jasmine] did is unfair to [plaintiff]," explaining, for example, that there is no pay for employees during break time, but that they never deducted plaintiff's break time from her hours worked. (*Id.*)

Plaintiff states that from January 2007 on, she complained to both Kapoor and Williams on a "number of occasions" about "the adverse treatment [she] suffered in wages, in overtime pay, and in accommodation." (*Id.* ¶ 25.) Plaintiff claims that, as a result, she was "placed under close, constant surveillance," and that her bosses "unceasingly found faults with [her] and made unwarranted criticism of [her] work in front of other employees." (*Id.* ¶ 26.)

### 3. Plaintiff's Use of the Unisex Bathroom

Bhardwaj states that, at Jasmine's location in the Wang Center at Stony Brook University, there are at least four separate male and female bathroom facilities. (Bhardwaj Aff. ¶ 40.) Nevertheless, plaintiff states the following about her experience:

[t]here is only one restroom in the Jasmine dining area, which was shared by male with female employees. Like most of man's room [sic], there were always some graffiti with sexual nature on the wall and the partitions in the bathroom, which were particularly offensive to and intended to provoke me as a woman. In addition, many male employees did not lock the door when using the bathroom, and when inquired about if any body [sic] was in the bathroom, they kept silence. As a result, I always had to be confronted with various awkward [sic] when going to the bathroom; what is worse, almost every time I used the bathroom, there was an unceasing

knock on the door to hurry me. Being the only female employee working in the kitchen, I was embarrassed very much with such situation. I ever [sic] reported these situations to the managers on a number of occasions; this notwithstanding, the situation was not improved. For this reason, I requested to be allowed to use a neighboring lady room, which is at the same floor as Jasmine and is very close to Jasmine, but was denied. Because of Defendants' full disregard of harassment I experienced as a woman, I had to endure such embarrassment day after day.

(Zhengfang Aff. ¶ 24.) At her deposition, plaintiff testified that Jasmine's chef had told her that workers may "only use the bathroom inside." (Zhengfang Dep. at 24.) Recounting her experiences with this bathroom, plaintiff testified that "three or four times at least there was no response when [she] knocked the door, but as soon as [she] opened the door, there were people inside. There were male workers inside, so [she] was very embarrassed." (*Id.* at 25.) Plaintiff testified that when she told the chef about these embarrassing instances, he told her to use the bathroom outside. (*Id.*)

Plaintiff testified that she started using the outside bathroom in approximately March 2007, (*id.* at 26), and that when her boss discovered that she had done so, he scolded her and told her to use the bathroom downstairs instead, which, according to plaintiff, takes longer to get to, (*id.* at 26-27.)

### 4. Plaintiff's Hospitalization

Plaintiff claims that, on March 21, 2007, Kapoor "reprimanded [her] publicly for not

4

finishing work in time and taking too long time break between two meals." (Zhengfang Aff. ¶ 27.) Plaintiff states that she was "so agonized then and there as to feel hyperventilation and severe chest pain, be unable to speak and stand but have to bend over the dishwasher machine." (*Id.*) Plaintiff further states that, following this incident, managers at Jasmine called an ambulance and plaintiff was taken to the Stony Brook University Hospital emergency room. (*Id.*) According to the attending doctor's report, while at the hospital, plaintiff was treated for headache, back pain, and chest pain. (Defs.' Ex. C, Attending Doctor's Report and Carrier/Employer Billing Form, July 13, 2010, ECF No. 18-1.) Plaintiff remained in the hospital until March 23, 2007. Plaintiff asserts that she then returned home to continue to rest because of the University's spring break. (Zhengfang Aff. ¶ 28.) Plaintiff was paid for the work period of March 19, 2007 through April 1, 2007. (Defs.' 56.1 ¶¶ 6, 9.)

Plaintiff states that she "was informed on the phone that [she] was required to return to work on April 2, 2007, and that Jasmine would pay the medical bill after [she] went back to work." [4] (Zhengfang Aff. ¶ 28.) Bhardwaj attests that plaintiff's hospital bill for $13,888.70 was submitted to Jasmine's workman's compensation insurance carrier, but that the carrier declined coverage. (Bhardwaj Aff. ¶ 17-18.) Defendants claim that coverage was denied "on the ground of lack of medical necessity." (Pl.'s Ex. 2, Defs.' Resp. to Pl.'s Interrogs. at 4, Sept. 8, 2010, ECF No. 22-2.)

---

[4] According to defendants' interrogatory responses, submitted by plaintiff with respect to this motion, defendants never promised to pay plaintiff's hospital bill. Rather, according to defendants, plaintiff "was told that Jasmine would submit her hospital bills to Jasmine's workman's compensation insurance carrier." (Pl's Ex. 2, Defs.' Resp. to Pl.'s Interrogs. at 4, Sept. 8, 2010, ECF No. 22-2.)

On April 9, 2007, plaintiff's brother, Jerome Liang ("Jerome"), sent defendants a letter demanding payment of Liang's hospital bill. (Defs.' 56.1 ¶ 33.) Jerome sent a second letter to defendants, on June 7, 2007, complaining about defendants' failure to pay plaintiff's hospital bill. (*Id.* ¶ 33.)

When plaintiff returned to work on April 2, 2007, her hours were reduced from fifty-eight hours per week to forty hours per week. (Defs.' Ex. K, Plaintiff's Paystubs for April-May 2007, July 13, 2010, ECF No. 18-4.) Bhardwaj states that plaintiff's hours were reduced because she "had been recently rushed to the hospital from work with chest pain, had stayed in the hospital for three days, and had spent a week in recovery at home." (Bhardwaj Aff. ¶ 42.) Plaintiff claims that in addition to learning that her hours had been cut, she was also told that she "would not be allowed to take break and to be provided with free food." (Zhengfang Aff. ¶ 30.)

### 5. Termination of Plaintiff's Employment

Plaintiff's employment with Jasmine terminated on May 18, 2007. (Defs.' 56.1 ¶¶ 10, 23.) Plaintiff claims that, on May 18, 2007, defendants requested that she report to work on August 28, 2007, but that when she arrived, she was told she would not be re-hired. (Zhengfang Aff. ¶ 35.) Defendants attest that plaintiff was not re-hired because of "Jasmine's projected budget and insufficient sales estimates for the fall 2007 semester." (Bhardwaj Aff. ¶¶ 23, 25.)

### 6. Jasmine's Department of Labor Investigation

In August 2007, Jasmine was audited by the United States Department of Labor ("DOL"), following undisclosed complaints from a number of Jasmine's employees. (Defs.' 56.1 ¶ 1; Bhardwaj Aff. ¶ 28.) The

DOL found that Jasmine had underpaid eighteen of its employees, employees of various race and national origin and of both genders. (Defs.' 56.1 ¶ 2.) Jasmine signed an agreement to pay the identified underpaid employees the back wages owed them. (*Id.* at ¶ 3.) Plaintiff received a check from Jasmine, dated February 1, 2008, for unpaid back wages and accrued interest in the amount of $2,231.27, which she accepted and cashed. (*Id.* at ¶ 4.)

## 7.  Plaintiff's Complaints to Administrative Agencies

On January 2, 2008, plaintiff filed a complaint against Jasmine with the New York State Division of Human Rights ("NYSDHR"), alleging gender discrimination and seeking compensation for (1) alleged overtime wages, (2) a $13,888.07 hospital bill, and (3) loss of employment from May 18, 2007 to October 18, 2007. (Defs.' Ex. G, Verified Complaint to NYSDHR, July 13, 2010, ECF No. 18-3.) After reviewing the complaint, the NYSDHR determined that there was no probable cause to find that Jasmine engaged in any unlawful discriminatory practices with respect to plaintiff, and thereby dismissed plaintiff's complaint. (Defs.' Ex. H, NYSDHR Determination and Order After Investigation, July 13, 2010, ECF No. 18-3.) On January 5, 2009, the Equal Employment Opportunity Commission ("EEOC") closed plaintiff's file, adopting the findings of the NYSDHR. (Defs.' Ex. H, EEOC Dismissal and Notice of Rights, July 13, 2010, ECF No. 18-3) Plaintiff also received a notice of her right to sue. (*Id.*)

## B.  Procedural Background

Plaintiff filed the complaint in the instant action on March 27, 2009. Defendants answered the complaint on July 9, 2009. On May 26, 2010, plaintiff filed a motion to compel. On July 13, 2010, defendants filed a motion for summary judgment. On September 8, 2010, plaintiff filed an opposition to defendants' motion. On September 22, 2010, defendants filed a reply in support of their motion.

On January 10, 2011, plaintiff moved for sanctions against defendants on the following grounds: (1) defendants' reply motion and associated filings misrepresented plaintiff's deposition testimony and plaintiff's opposition papers; (2) defendants improperly submitted an affidavit without identifying the affiant as a witness, and two documents without providing information about those materials; (3) defendants manipulated or forged documents; (4) defendants made frivolous arguments without any basis in law or fact; and (5) defendants' reply was filed in bad faith. (Pl.'s Mot. for Sanctions, Jan. 10, 2011, ECF No. 29.) On March 17, 2011, the Court held a telephone conference and set a briefing schedule with respect to plaintiff's motion for sanctions. The Court also terminated defendants' motion for summary judgment without prejudice to renew once the Court decided plaintiff's pending motion to compel.

On April 21, 2011, defendants' filed their opposition to plaintiff's motion to compel. On June 6, 2011, plaintiff filed a motion to appoint counsel, and on June 8, 2011, filed a reply in support of her motion for sanctions. On August 9, 2011, the Court denied both plaintiff's motion to compel and plaintiff's motion to appoint counsel.

On August 12, 2012, the Court issued an Order directing plaintiff to submit any additional evidence in support of her opposition to defendants' motion for summary judgment, or to submit a letter indicating that she plans to rely on the

opposition she previously submitted on September 8, 2010.

On August 24, 2011, plaintiff filed an additional memorandum in opposition to defendants' motion for summary judgment. On September 9, 2011, defendants filed a supplemental reply affidavit in support of their motion, as well as an additional affidavit from the Chief Operating Officer of Jasmine, Bhardwaj. The Court has fully considered the submissions of the parties.

## II. STANDARD OF REVIEW

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W.*

*Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . The nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g.*, *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

III. Discussion

A. Plaintiff's FLSA Claims[5]

Plaintiff asserts that she has not been fully compensated for her overtime wages under the FLSA, and that she was discharged in retaliation for her complaints of underpayment. Defendants move for summary judgment with respect to plaintiff's unpaid wages claim on the grounds that: (1) plaintiff waived her right to sue when she accepted the DOL's payment, and (2) plaintiff's claims are barred by the statute of limitations. Defendants move for summary judgment with respect to plaintiff's retaliation claim on the ground that plaintiff's complaints cannot constitute protected activity under the FLSA. For the reasons set forth below, the Court denies defendants' motion with respect to plaintiff's unpaid overtime wages claim, and grants defendants' motion with respect to plaintiff's retaliation claim.

1. Plaintiff's Unpaid Overtime Wages Claim

Under the FLSA, employers engaged in interstate commerce must pay overtime pay to an employee working more than forty hours per week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The regular, minimum rates at which employees must be paid are established by section 206 of the FLSA. 29 U.S.C. § 206(a). In addition, the FLSA sets forth a broad civil enforcement scheme, pursuant to which "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). In an action to recover unpaid overtime wages under FLSA, a "plaintiff must show that: (1) he was an employee who was eligible for overtime ([i.e.,] not exempt from the Act's overtime pay requirements); and (2) that he actually worked overtime hours for which he was not compensated." *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 447 (E.D.N.Y. 2009).

---

[5] In her supplemental opposition, plaintiff refers to claims brought under the New York State Labor Laws. (Pl.'s Supplemental Opp'n at 9, Aug. 24, 2011, ECF No. 67.) However, plaintiff did not assert any New York State Labor Law claims in her complaint. If plaintiff wishes to bring claims against defendants pursuant to the New York State Labor Laws, plaintiff must make a formal motion to amend her complaint.

Plaintiff alleges that she worked fifty-eight hours per week during her employment at Jasmine, and that she was not compensated for overtime work. The Court notes that plaintiff was compensated for some overtime wages after the DOL audit. (Pl.'s Supplement Ex., DOL WH-60 and Breakdown of Payment, Aug. 24, 2011, ECF No. 67-2.) Plaintiff claims that she worked additional hours that Jasmine's payment following the DOL audit did not compensate her for. (Pl.'s Supplemental Opp'n at 8, Aug. 24, 2011, ECF No. 67 ("In fact, the back wages of $2,194.69 is not a payment in full because it was obtained based on false information that Jasmine provided to WHD that Plaintiff worked 49 to 55 hours per week.").)

a. Waiver of Right to Sue under the FLSA

Under the FLSA,

[t]he Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.

29 U.S.C. § 216(c). As one court within this district has noted, and this Court agrees with the analysis contained therein, "[a] valid waiver of plaintiff's right to sue requires: '(a) that the employee agree to accept payment which the Secretary [of Labor] determines to be due and (b) that there be payment in full,' . . . and both elements must

be satisfied independently." *Parada v. Banco Indus. de Venezuela, C.A.*, No. 10 Civ. 0883(SHS), 2011 WL 519295, at *9 (S.D.N.Y. Feb. 15, 2011) (quoting *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537, 539 (5th Cir. 1977) and citing *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 305 (7th Cir. 1986)). As the Seventh Circuit noted in *Walton*,

The Department apparently distinguishes among settlements. When it thinks it has achieved "enough" for the employees–something close to full payment of the wages and overtime due–it sends them agreements explicitly releasing the right to sue, and it requests them to sign these forms if they wish to take the money. When the Department thinks it has fallen far short, it does not solicit these signatures.

786 F.2d at 306. The Court concluded that,

The Department of Labor did not send out form agreements in this case or ask the employees to surrender any rights. [Defendant] could have negotiated for a settlement under which the Department would have solicited such agreements, but either [defendant] did not ask or the Department did not assent. The employees' cashing of the checks they received therefore did not release their full claims against [defendant].

*Id.* at 307.

Thus, courts that have determined that a plaintiff's FLSA claims were waived pursuant to a DOL settlement have found that the waiver occurred pursuant to

plaintiff's receipt of a WH-58 form, which contains explicit waiver language, or a similar form containing explicit waiver language. [6] *See, e.g.*, *Blackwell v. United Drywall Supply*, 362 F. App'x 56, 58 (11th Cir. 2010) ("We agree with the district court that these [WH-58] forms unambiguously informed Plaintiffs that, if they cashed the checks provided with the forms, they would be waiving their rights to sue for back pay."); *Kaiser v. At the Beach, Inc.*, No. 08-CV-586-TCK-FHM, 2010 WL 5114729, at *10 (N.D. Okla. Dec. 9, 2010) (where plaintiff's payment from the DOL was accompanied by a WH-58 form, plaintiff's action in cashing the check waived all claims for back wages); *Selz v. Investools, Inc.*, No. 2:09-CV-1042 TS, 2010 WL 1451347, at *5 (D. Utah Apr. 8, 2010) (where plaintiff received payment with DOL's "Receipt Form" containing explicit waiver language, plaintiff's action in cashing check waived all FLSA claims); *cf.*

---

[6] Though the WH-58 form has not been submitted to the Court as part of this case, other courts have noted that the WH-58 form contains the following waiver language:

> NOTICE TO EMPLOYEE UNDER THE FAIR LABOR STANDARDS ACT (FLSA): Your acceptance of this payment of wages and other compensation due under the FLSA based on the findings of the Wage and Hour Division means that you have given up the right you have to bring suit on your own behalf for the payment of such unpaid wages or unpaid overtime compensation for the period of time indicated above and an equal amount in liquidated damages, plus attorney's fees and court costs under Section 16(b) of the FLSA. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this receipt unless you have actually received this payment in the amount indicated above of the wages and other compensation due you.

*Victoria v. Alex Car, Inc.*, No. 11 C 9204, 2012 WL 1068759, at *2 (N.D. Ill. Mar. 29, 2012).

*Jones v. Midlands Neurology & Pain Assocs., P.A.*, No. 3:11-2623-CMC-SVH, 2012 WL 2913224, at *3 & n.5 (D.S.C. July 17, 2012) (adopting report and recommendation and denying summary judgment where "[d]efendants merely submitted evidence that shows payment of the wages to Plaintiff, and not evidence that she knowingly waived her FLSA rights by accepting the payment" and plaintiff alleged "that she was not aware she was potentially relinquishing rights and that she did not receive a Form WH-58 (Receipt for Payment and Back Wages) to sign").

In this case, defendants have not produced evidence of plaintiff's receipt of any form containing explicit (or implicit) waiver language. Also, the DOL's WH-60 form that was mailed to plaintiff does not contain a waiver of plaintiff's right to sue under the FLSA. Thus, although plaintiff received payment from the DOL for back wages, there is nothing to indicate that plaintiff agreed to accept the payment and waive any claims under 29 U.S.C. § 216(c). As such, defendants' motion for summary judgment on the ground of waiver is denied.

b.  Statute of Limitations

Defendants contend that plaintiff's FLSA claims are barred by the applicable two-year statute of limitations. (Defs.' Mot. for Summ. J. at 3, July 13, 2010, ECF No. 17-4.) Plaintiff filed her complaint on March 27, 2009. By plaintiff's own admission, she no longer worked over forty hours per week after her March 21, 2007 hospitalization. (Zhengfang Aff. ¶ 30.)

A suit under the FLSA must be commenced within two years after the cause of action has accrued, unless a plaintiff can show that a defendant's violation of the Act was willful, in which case a three-year statute of limitation applies. 29 U.S.C.

§ 255. For an employer's actions to be willful, the employer must have "either [known] or showed reckless disregard as to whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Courts in this Circuit have generally left the question of willfulness to the trier of fact. *See, e.g.*, *Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 297 (E.D.N.Y. 2007) (denying summary judgment as to willfulness where plaintiffs had complained to defendants about their pay); *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819(GEL), 2005 WL 1214337, at *2-3 (S.D.N.Y. May 20, 2005) (denying motion to dismiss as to willfulness where plaintiffs alleged defendants knew the requirements of FLSA and deliberately misclassified them as independent contractors); *Vaicaitiene v. Partners in Care, Inc.*, No. 04 Civ. 9125(RMB)(THK), 2005 WL 1593053, at *7 (S.D.N.Y. July 6, 2005) (finding willfulness to be a question for the trier of fact); *Davis v. Lenox Hill Hosp.*, No. 03 Civ. 3746 (DLC), 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004) (same).

In support of her claim that a three-year statute of limitations should apply, plaintiff states that defendants did not post notices of the FLSA or New York State Labor Laws, (Zhengfang Aff. ¶ 38), and that defendants did not provide plaintiff with a statement of her work hours and her rate of pay along with her paycheck, (Pl.'s Supplemental Opp'n at 9.) Plaintiff also claims that defendants made cash payments to other employees to supplement their income. (Zhengfang Aff. ¶¶ 21-22.) Additionally, the Court notes that defendants have stated that they were not using time cards for their employees. (Pl.'s Supplement Ex., Letter from Bhardwaj to N.Y. State Division of Human Rights, Aug. 24, 2011, ECF No. 67-2.) Thus, at the very least, a disputed issue of fact exists with respect to whether

defendants' alleged violation of the FLSA was willful. *See Moon v. Kwon*, 248 F. Supp. 2d 201, 231 (S.D.N.Y. 2002) (finding willful violations where the evidence was "clear that the defendants also flagrantly violated basic recordkeeping requirements and knowingly paid employees off-the-books in cash without reporting those cash payments to the tax authorities.").

The Court therefore denies defendants' motion for summary judgment with respect to defendants' claim that the statute of limitations bars plaintiff's claim of unpaid overtime wages. A disputed issue of fact exists as to whether the two or three year statute of limitations applies. As such, plaintiff's FLSA claim relating to conduct within the three year period prior to the filing of this lawsuit survives defendants' motion for summary judgment.[7]

---

[7] Plaintiff argues that, "as a new immigrant speaking no English, Plaintiff did not and had no reason to know [about the FLSA]." (Pl.'s Supplemental Opp'n at 9.) Plaintiff requests that the statute of limitations be equitably tolled until February 2008, when she first learned about both the FLSA and Jasmine's violation of the Act from the DOL investigation. (*Id.* at 9-10.) Where a FLSA notice has not been posted, and plaintiff is an immigrant with a limited ability to learn of FLSA protections, a basis for equitable tolling may exist. *See Leon v. Pelleh Poultry Corp.*, No. 10 Civ. 4719(GAY), 2011 WL 4888861, at *3 (S.D.N.Y. Oct. 13, 2011) ("The required posted notices could conceivably have been the only way they would have become aware of their right to such compensation under the FLSA. Moreover, plaintiffs, according to their complaint, are immigrant Latino manual workers routinely working longer than ten hours per day and forty hours per week. Their ability to learn of this and other legal rights under the complex web of labor and social legislation that governs the modern workplace is not great. . . . A possible basis is therefore established for equitable tolling." (footnote, citation, and internal quotation marks omitted)). The relevant question is whether a reasonable plaintiff in her circumstances would have been aware of her rights. *Id.* at *3. In this case, defendants have produced evidence that plaintiff's brother, an employee of Stony Brook University's

Thus, plaintiff's claim of unpaid overtime wages within the three years prior to the filing of her complaint survives summary judgment.[8]

_____

School of Medicine, sent them a letter on plaintiff's behalf in April 2007, referencing New York's minimum wage and overtime requirements, as well as recent notes from the New York State Department of Labor. (Defs.' Ex. E, Apr. 9, 2007 Letter from Jerome Liang to Café Spice, July 13, 2010, ECF No. 18-2 ("I shall emphasize the New York State Department of Labor's recent Notes (from Eliot Spitzer, Governor and M. Patricia Smith, Commissioner) that the New York State's minimum wage was increased to $7.15 per hour by January 1, 2007. This rate is based on forty hours per week. Any time worked beyond forty hours in a week is to be paid at time and a half. If your firm has not yet compensated to Ms. Zhengfang Liang by this minimum wage since January 1, 2007, you must do so immediately and make retroactive payments to her accordingly.").) The Court finds that given this evidence, a reasonable plaintiff in plaintiff's situation would have been aware of her rights under the FLSA, and, as a result, no basis for equitable tolling exists.

[8] The Court is aware that plaintiff has already been compensated, with overtime pay, for forty-nine hours of work per week in the spring of 2006, fifty-five hours of work per week in the fall of 2006, and fifty-two hours per week in the winter of 2007. (Pl.'s Supplement Exhibit, DOL WH-60 and Breakdown of Payment, Aug. 24, 2011, ECF No. 67-2.) Plaintiff alleges, however, that she worked fifty-eight hours per week during all three of these time periods. (See Zhengfang Aff. ¶¶ 12, 19). The Court also notes that neither party has introduced evidence regarding unpaid break time, though it appears from plaintiff's affidavit that she was, in fact, given break time during her employment. (See id. ¶ 30 (stating that, in April 2007, she "was informed that [she] would not be allowed to take break and to be provided with free food").) Thus, to the extent that defendants rely on the argument that plaintiff has been fully compensated under their payment to her following the DOL audit, defendants have not pointed to evidence showing that plaintiff has, in fact, been fully compensated for her time worked. Summary judgment is therefore inappropriate at this time.

2. Plaintiff's FLSA Retaliation Claim

The anti-retaliation provision of the FLSA provides that it shall be unlawful for any person:

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee;

29 U.S.C.A. § 215(a)(3). The Supreme Court has held that:

> To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met, however, by oral complaints, as well as by written ones.

*Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1335 (2011). Moreover, according to the Second Circuit, "The plain language of [the FLSA provision] limits the cause of action to retaliation for filing formal complaints . . . but does not encompass complaints made to a supervisor." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993), *abrogated on other grounds by Kasten*, 131 S. Ct. at 1335; *see also Hyunmi Son v. Reina Bijoux, Inc.* 823 F. Supp. 2d 238, 244 (S.D.N.Y. 2011) (holding that *Lambert*'s holding that internal complaints to employers, as opposed to government authorities, are not protected by the anti-

retaliation provision of the FLSA was not altered by the Supreme Court's ruling in *Kasten*); *Graves v. Deutsche Bank Secs. Inc.*, No. 07 Civ. 5471 (BSJ), 2010 WL 997178, at *4 (S.D.N.Y. Mar. 18, 2010) ("[T]he FLSA bars discrimination only when the retaliation is in response to a formal complaint lodged with the Department of Labor.").

Here, plaintiff has only produced evidence of complaints that she made to her employer during the relevant time period. (*See* Zhengfang Aff. ¶ 17-18, 23, 25, 29, 32, 34.) Accordingly, because there is no evidence that plaintiff lodged a complaint, oral or written, to a proper government authority prior to her termination, summary judgment with respect to plaintiff's retaliation claim under the FLSA is granted in defendants' favor.

### B.  Plaintiff's EPA Claims

Defendants move for summary judgment with respect to plaintiff's EPA claims on the following grounds: (1) plaintiff's claims are time barred by the statute of limitations; (2) as to plaintiff's disparate pay claim, plaintiff cannot establish a *prima facie* case of discrimination; and (3) plaintiff's retaliation claim must fail, as a matter of law, because her complaints of wage discrimination made to her employer fail to support such a claim. For the reasons set forth below, the Court grants defendants' motion for summary judgment with respect to plaintiff's EPA claims.

### 1. Plaintiff's EPA Disparate Pay Claim

#### a.  Applicable Law

Under the EPA,

[n]o employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. § 206(d)(1). "To prove a violation of the EPA, a plaintiff must first establish a *prima facie* case of discrimination by showing: i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) (internal quotation marks and citation omitted).

Once a plaintiff has made out a *prima facie* case of discrimination under the EPA, "the burden of persuasion shifts to the defendant to show that the wage disparity is justified by one of the affirmative defenses provided under the Act: '(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.'" *Id.* at 136 (quoting 29 U.S.C. § 206(d)(1)). To successfully establish the last defense, a "factor other than sex", the employer "must also demonstrate that it had a legitimate business reason for implementing the gender-neutral factor that brought about the wage differential." *Id.*

Once the employer has established one of the enumerated affirmative defenses, the plaintiff may counter the defense "by producing evidence that the reasons the defendant seeks to advance are actually a pretext for sex discrimination." *Id.*

A claim under the EPA "must be commenced within two years of its accrual, or three years if the violation is willful." *Pollis v. New Sch. for Social Research*, 132 F.3d 115, 118 (2d Cir. 1997).

b. Analysis

Defendants move for summary judgment on the grounds that plaintiff has not established a *prima facie* case of wage discrimination because plaintiff premises her claim on a comparison of her wages with those of her husband, who had additional job responsibilities.[9] (Affidavit of Darren H. Fairlie in Reply and in Further Support of Defs.' Mot. for Summ. J. ("Fairlie Reply Aff.") ¶¶ 39-40, Sept. 9, 2011, ECF No. 76.) Defendants argue that Yu was both a prep cook and dishwasher, and that he was therefore not similarly situated to plaintiff, who worked only as a dishwasher. (Defs.' Mot. for Summ. J. at 10.) As discussed *supra*, the exact nature of Yu's job responsibilities at Jasmine is disputed. However, given the uncontroverted evidence in the record, the Court finds that plaintiff cannot establish that Jasmine pays different wages to employees based on sex.

Plaintiff produced a document, which was submitted to the DOL, in which Jasmine listed, *inter alia*, the last paycheck amount paid to its employees, the gender of those employees, and the years of experience for those employees. (Pl.'s Opp'n Exs. at 17-19, DOL Documents, Sept. 8, 2010, ECF No. 22-2.)[10] Bhardwaj acknowledges that the document provides the "name, gender, hire date, job description, most recent weekly salary or hourly rate the employee had received to date, and the employee's restaurant industry experience prior to employment with Jasmine." (Reply Affidavit of Bhardwaj ("Bhardwaj Reply Aff.") ¶ 6, Sept. 22, 2010, ECF No. 26-2.) Of the four employees listed as dishwashers, two are male (M.C. and I.Z.) and two are female (plaintiff and C.U.). All of the dishwashers are listed as having received $400 per week as their most recent weekly salary to date. (Pl.'s Opp'n Exs. at 17-19.) It is undisputed that plaintiff received $400 per week after two semesters of work at Jasmine. Thus, the only possible instance of disparate pay is the $375 per week salary plaintiff received during her first two semesters of work.

The uncontroverted evidence shows that, of the two female dishwashers, C.U. was paid $400 per week at the time of hire and plaintiff was paid $375 per week at the time of hire. Bhardwaj states that, at the time of her hire, C.U. was paid $400 per week, (Bhardwaj Reply Aff. ¶ 7), and defendants produced a copy of Jasmine's check register reflecting C.U.'s weekly pay of $400. (Defs.' Ex. A, CompuPay Check Register, Sept. 22, 2010, ECF No. 26-3.) As noted *supra*, it is undisputed that plaintiff received $375 at the time of her hire.

---

[9] To the extent defendants argue that plaintiff's EPA claim should be dismissed because she failed to oppose defendants' arguments in her initial opposition, given plaintiff's *pro se* status and the unique procedural posture of defendants' motion, the Court declines to consider plaintiff's EPA claims waived by her failure to directly oppose defendants' motion in the first instance.

[10] Plaintiff's exhibits to her opposition to defendants' motion for summary judgment, filed on September 8, 2010, do not contain clear divisions. ECF page numbers are therefore given.

The uncontroverted evidence also shows that, of the two male dishwashers, M.C. was paid $400 at the time of hire and I.Z. was paid $300 at the time of hire. Bhardwaj states that, at the time of his hire, M.C. was paid $400 per week, (Bhardwaj Reply Aff. ¶ 8), and the Jasmine check register reflects payment to M.C. in that amount. (Defs.' Ex. A, CompuPay Check Register.) Bhardwaj states that, at the time of his hire, I.Z. was paid $300 per week, (Bhardwaj Reply Aff. ¶ 8), and the Jasmine check register reflects payment to I.Z. in the amount of $297.10. (Defs.' Ex. A, CompuPay Check Register.) The Court notes that plaintiff contends that Yu was paid $400 while he was working as a dishwasher.

As the Second Circuit has stated, "[t]he problem with comparing plaintiff's pay only to that of a single male employee is that it may create the impression of an Equal Pay Act violation where no widespread gender discrimination exists." *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 481 (2d Cir. 2001). Thus, plaintiff cannot only look to Yu as her basis for comparison. Considering all of the evidence in the record regarding salaries paid by Jasmine to dishwashers, the Court concludes that plaintiff has not established the first element of her *prima facie* case of wage discrimination – namely, that the employer pays different wages to employees of the opposite sex. Yu (male), M.C. (male), and C.U. (female) were paid $400 per week at the time of hire, plaintiff (female) was paid $375 per week at the time of hire, and I.Z (male) was paid $300 at the time of hire. Thus, at one point in time, both male and female dishwashers were paid more than plaintiff, and plaintiff herself was paid more than a similarly situated male employee. Additionally, all dishwashers, male and female alike, were eventually paid

$400 per week during the course of their employment.[11]

As such, the Court grants defendants' motion with respect to plaintiff's EPA disparate pay claim.[12]

2. Plaintiff's EPA Retaliation Claim

"The EPA is an amendment to the FLSA and is codified under the same chapter; thus retaliation for filing EPA complaints falls under § 215(a)(3)." *Lambert*, 10 F.3d at 55. As such, "[t]he plain language of this provision limits the cause of action to retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor." *Id.*

Here, it is undisputed that while plaintiff complained to management about her pay, plaintiff did not file a formal complaint, institute a proceeding, or testify regarding her complaints.[13] Thus, summary judgment

---

[11] Defendants also move for summary judgment on the ground that the statute of limitations bars plaintiff's EPA claims. As stated *supra*, a three year statute of limitations applies to willful violations of the EPA. Even if plaintiff could establish a *prima facie* case of wage discrimination under the EPA, the only period of disparate pay would have occurred during the short period of time from late March 2006 to May 2006, when plaintiff received $375. Given plaintiff's failure to establish a *prima facie* case of wage discrimination, the Court declines to address the statute of limitations issue.

[12] To the extent plaintiff asserts in her complaint that an EPA disparate pay claim stands because male employees received overtime wages while she did not, there is nothing in the record to support plaintiff's claim. Thus, summary judgment with respect to this aspect of plaintiff's claim is granted in favor of defendants.

[13] The Court is aware that plaintiff filed a complaint with the NYSDHR on January 2, 2008, alleging gender discrimination and seeking payment for (1) alleged overtime wages, (2) a $13,888.07 hospital bill, and (3) loss of employment from May 18, 2007 to October 18, 2007. (Defs.' Ex. G, Verified

is granted with respect to plaintiff's EPA retaliation claim.[14]

### C. Plaintiff's Employment Discrimination Claims

Plaintiff has asserted claims of gender discrimination pursuant to both Title VII and the NYSHRL, and claims of race and national origin discrimination pursuant to Title VII, the NYSHRL, and Section 1981. Plaintiff alleges that defendants discriminated against her on the basis of her gender when they (1) paid her less than they paid her male counterparts, (2) denied her overtime pay, (3) maintained a hostile work environment, and (4) terminated her in retaliation for her protected activities under Title VII. Plaintiff alleges that defendants discriminated against her on the basis of her race or national origin when they (1) paid her less than they paid employees of other races and national origins, (2) denied her overtime pay, (3) created a hostile work environment, and (4) terminated her employment in retaliation for her opposition to defendants' race discrimination.

Defendants move for summary judgment on the ground that plaintiff cannot establish a *prima facie* case of discrimination. For the reasons set forth below, the Court grants defendants' motion for summary judgment with respect to plaintiff's disparate treatment claims, hostile work environment claims, and retaliatory hostile work environment claims, and denies defendants' motion with respect to plaintiff's retaliatory failure to re-hire claim.

### 1. Plaintiff's Disparate Treatment Claims

#### a. Legal Standard

Title VII prohibits discrimination against an employee based on her gender, race, or national origin.[15] *See* 42 U.S.C. § 2000e-2(a). Here, plaintiff claims she has been discriminated against by defendant on the basis of her gender, race, and national origin.

The "ultimate issue" in any employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment action was motivated, at least in part, by an "impermissible reason," *i.e.*, that there was discriminatory intent. *Fields v. N.Y. State Office of Mental Retardation & Dev'l Disabilities*, 115 F.3d 116, 119 (2d Cir. 1997). In the absence of direct evidence of discrimination, a plaintiff in an employment discrimination case must satisfy the three step *McDonnell Douglas* test. First, a plaintiff must establish a *prima facie* case of unlawful discrimination by showing that (1) she is a member of a protected class (2) who performed her job satisfactorily (3) but suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination or retaliation. *See McDonnell Douglas Corp.*

---

Complaint to NYSDHR.) However, this complaint was filed *after* plaintiff's termination, which occurred on May 18, 2007, and therefore no retaliatory act by defendants could be premised on that complaint.

[14] To the extent plaintiff alleges that she was subject to a retaliatory hostile work environment due to her EPA complaints, summary judgment is appropriate for the same reasons set forth above.

[15] In addition to bringing claims under Title VII, plaintiff alleges discrimination under both Section 1981 and the NYSHRL. Claims of discrimination brought under Section 1981 or the NYSHRL are analyzed using the same framework as claims brought under Title VII, and the outcome in each instance will be the same as the outcome under Title VII. *See Mavrommatis v. Carey Limousine Westchester, Inc.*, 476 F. App'x 462, 464 (2d Cir. 2011) (noting that discrimination claims brought pursuant to Section 1981 are analyzed under the same *McDonnell Douglas* burden-shifting analysis that is applied to claims brought pursuant to Title VII); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714-15 (2d Cir. 1996) (explaining that claims brought pursuant to the NYSHRL are governed by the same standards as claims brought under Title VII).

*v. Green*, 411 U.S. 792, 802 & n.13 (1973) (noting that elements of *prima facie* case vary depending on factual circumstances); *Stratton v. Dep't for the Aging for N.Y.*, 132 F.3d 869, 879 (2d Cir. 1997).

Second, if the plaintiff establishes a *prima facie* case, "a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision." *Stratton*, 132 F.3d at 879; *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000). The purpose of this step is "to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent." *Fisher v. Vassar College*, 114 F.3d 1332, 1335 (2d Cir. 1997) (en banc), *abrogated on other grounds by Reeves*, 530 U.S. 133.

Third, if the employer articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993) (citation omitted); *see also James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The plaintiff must then prove, by a preponderance of the evidence and without the benefit of any presumptions, that more likely than not the employer's proffered reason for its actions is merely a pretext for unlawful discrimination. *See Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 317 (2d Cir. 1999); *Fields*, 115 F.3d at 121; *Connell v. Consol. Edison Co.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

To meet this burden, the plaintiff may rely on evidence presented to establish her *prima facie* case, as well as additional evidence. *See James*, 233 F.3d at 154-57; *see also Norton v. Sam's Club*, 145 F.3d 114, 118-19 (2d Cir. 1998) (plaintiff may produce direct or circumstantial evidence of discrimination). The key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *James*, 233 F.3d at 152, 154-7; *Connell*, 109 F. Supp. 2d at 207-08.

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." 233 F.3d at 157; *see also Norton*, 145 F.3d at 118 ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

b. Analysis

Plaintiff's disparate treatment claims are premised on plaintiff's allegation that she received unequal pay and no overtime pay on the basis of her gender, race, and national origin. "To establish a prima facie case of disparate pay under Title VII, a plaintiff must show: '(1) that he was a member of a protected class; (2) that he was paid less than similarly situated non-members of his protected class; and (3) evidence of discriminatory animus.'" *Thomas v. iStar Financial, Inc.*, 438 F. Supp. 2d 348, 367 (S.D.N.Y. 2006) (quoting *Quarless v. Bronx-Lebanon Hosp. Ctr.*, 228 F. Supp. 2d 377, 383 (S.D.N.Y. 2002), *aff'd* 75 F. App'x 846 (2d Cir. 2003)). As set forth below, plaintiff fails to establish a *prima facie* case of disparate pay or disparate overtime wages

based on gender, race, or national origin.[16] Because plaintiff fails to establish a *prima facie* case, the Court need not address the second two steps of the *McDonnell Douglas* test.

i.   Plaintiff's Gender Discrimination Claims

With respect to plaintiff's gender discrimination claim, in addition to establishing the first two elements of the *prima facie* case, which are generally the same requirements as those under the EPA, a "Title VII plaintiff must also produce evidence of discriminatory animus in order to make out a prima facie case of intentional sex-based salary discrimination." *Klinefelter v. LaHood*, No. 09-CV-299-S, 2011 WL 5979022, at *4 (W.D.N.Y. Nov. 27, 2011) (quoting *Belfi v. Prendergast*, 191 F.3d 129, 139 (2d Cir. 1999)). As stated *supra*, plaintiff cannot show that she was paid less than similarly situated male employees. Additionally, plaintiff has not shown that similarly situated male employees were paid overtime wages while plaintiff was not. Plaintiff has therefore not established a *prima facie* case with respect to her gender discrimination claims of disparate pay and unpaid overtime. As such, plaintiff's Title VII and NYSHRL claims of disparate treatment based on gender must be dismissed.[17]

ii.   Plaintiff's Race and National Origin Discrimination Claims

Plaintiff has failed to produce evidence that she was paid less than similarly situated non-Asian or non-Chinese employees. In fact, plaintiff's only comparator is her husband, and he is Chinese and was allegedly paid more than plaintiff. Plaintiff has not produced evidence of the races or national origins of any of the other dishwashers. Plaintiff has also failed to produce evidence showing that similarly-situated non-Asian or non-Chinese employees were paid overtime wages while plaintiff was not. In fact, Bhardwaj states that the DOL found, pursuant to its investigation of Jasmine, that Jasmine had underpaid employees of various races and national origins.[18] (Bhardwaj Aff. ¶ 29.)

In addition, plaintiff has not produced any evidence of discriminatory animus by Jasmine towards Asian or Chinese employees. There is no evidence of racial or national origin-related comments made or actions taken by Jasmine during the course of plaintiff's employment. There is simply nothing in the record to demonstrate any discriminatory animus with respect to plaintiff's claims of disparate pay and disparate overtime pay.[19] As such, plaintiff's Title VII and NYSHRL claims of disparate treatment based on race and national origin must be dismissed.

---

[16] To the extent plaintiff argues in her opposition papers that she was discharged due to discrimination based on gender, race and/or national origin, plaintiff did not assert those claims in her complaint. Any attempt by plaintiff to raise those claims must be made through a formal motion to amend her complaint. However, the Court notes that it appears as though those claims have been exhausted, and would not survive a motion to amend.

[17] In addition, there is nothing in the record to demonstrate any discriminatory animus by Jasmine towards women with respect to pay.

[18] Though plaintiff states that a Hispanic co-worker informed plaintiff that her wages were the lowest of any Jasmine employee, (Zhengfang Aff. ¶ 16), this statement is hearsay and need not be considered by the Court. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.").

[19] Plaintiff states that there were six Chinese employees working for Jasmine, four of whom were "discharged or constructively discharged." (Zhengfang Aff. ¶ 37.) Plaintiff's statement relates, however, to discharge, not to disparate pay or disparate overtime pay, and, in any event, is wholly conclusory and insufficient to establish discriminatory animus on the part of defendants.

## 2.  Plaintiff's Hostile Work Environment Claims

Plaintiff alleges that her use of the unisex bathroom and the events that occurred during her use of the bathroom constituted a hostile work environment. For the reasons set forth below, defendants' motion for summary judgment is granted with respect to this claim.

### a.  Applicable Law

To establish a hostile work environment under Title VII, a plaintiff must show that her workplace was "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[20] *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "Isolated instances of harassment ordinarily do not rise to this level." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000); *see also Williams v. Cnty. of Westchester*, 171 F.3d 98, 100-01 (2d Cir. 1999) ("[P]laintiff must show more than a few isolated incidents of racial enmity" to establish a claim of a racially hostile work environment (internal citations

---

[20] Plaintiff also brings a hostile work environment claim under the NYSHRL. Hostile work environment claims brought under the NYSHRL are analyzed using the same framework as hostile work environment claims brought under Title VII, and the outcome under state law will be the same as the outcome under Title VII. *See, e.g.*, *Collier v. Boymelgreen Developers*, No. 06-CV-5425 (SJ), 2007 WL 1452915, at *4 (E.D.N.Y. May 17, 2007) (explaining, in a case where plaintiffs brought hostile work environment claims under both Title VII and the NYSHRL, that "[t]he Court's consideration of claims brought under NYSHRL . . . parallels the analysis used for Title VII claims").

and quotation marks omitted)). A plaintiff must show not only that the conduct in question was "severe or pervasive enough to create an objectively hostile or abusive work environment," but also that "the victim . . . subjectively perceive[d] that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (internal citations and quotation marks omitted); *see also Terry*, 336 F.3d at 148. In addition, a plaintiff seeking to establish a hostile work environment claim must demonstrate that "a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).

Relevant factors to consider in determining whether an environment is sufficiently hostile include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Terry*, 336 F.3d at 148.  The Second Circuit has noted, however, that "[w]hile the standard for establishing a hostile work environment is high, . . . . [t]he environment need not be 'unendurable' or 'intolerable.'" *Id.* (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)). Moreover, although a hostile work environment generally consists of "continuous and concerted" conduct, "a single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace." *Feingold*, 366 F.3d at 150 (quotation marks omitted).

### b.  Analysis

Having reviewed the record, the Court concludes that defendants' motion for summary judgment with respect to plaintiff's hostile work environment claim

must be granted. In this case, it is undisputed that (1) there were four separate male and female bathroom facilities in the Wang Center, (2) a chef informed plaintiff that she could use the other bathrooms, and (3) plaintiff did in fact use a bathroom other than the unisex bathroom. Given that plaintiff had alternatives to using the unisex bathroom, the issues plaintiff raises regarding her experiences while using the unisex bathroom are not sufficiently severe or pervasive enough to support a hostile work environment claim. Thus, plaintiff's hostile work environment claim based on gender must be dismissed.

### 3. Plaintiff's Retaliation Claims

Plaintiff alleges that she was retaliated against for engaging in protected activities with respect to her gender and race. Specifically, plaintiff claims that she was subjected to a retaliatory hostile work environment and not re-hired in the fall 2007 semester in retaliation for her protected activities. As set forth below, defendants' motion for summary judgment is denied with respect to plaintiff's retaliatory failure to re-hire claim, and granted with respect to plaintiff's retaliatory hostile work environment claims.

### a.  Applicable Law

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a).

A claim of retaliation brought under Title VII is analyzed under the three-step burden-shifting analysis laid out in

*McDonnell Douglas*, 411 U.S. at 802-05.[21] *See Terry*, 336 F.3d at 141.  Under this framework, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the [adverse action]; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext" for retaliation. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) defendant was aware of that activity; (3) plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 66 (2d Cir. 1998); *see also Terry*, 336 F.3d at 141. An employment action is considered adverse if it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  In determining whether a plaintiff has established a *prima facie* case to survive a summary judgment motion, "the court's role . . . is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Jute v. Hamilton Sunstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).

---

[21] The *McDonnell Douglas* burden shifting analysis also applies to plaintiff's retaliation claims brought under the NYSHRL. *See Van Zant*, 80 F.3d at 714-15 ("New York courts require the same standard of proof for claims brought under the Human Rights Law as those brought under Title VII." (citation and quotations omitted)).

"Title VII is violated when 'a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause.'" *Terry*, 336 F.3d at 140-41 (quoting *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)). Likewise, if the employer was at all motivated by retaliatory animus, the law is violated even if there were objectively valid grounds for the adverse employment action. *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).

In addition to relying on discrete employment actions to prove retaliation, a plaintiff can also try to prove that a retaliatory hostile work environment existed. In order to establish a retaliatory hostile work environment, a plaintiff must satisfy the same standard that governs hostile work environment claims. *See, e.g.*, *Rasco v. BT Radianz*, No. 05 Civ. 7147 (BSJ), 2009 WL 690986, at *15 (S.D.N.Y. Mar. 17, 2009) ("To establish that a retaliatory hostile work environment constitutes a materially adverse change that might dissuade a reasonable worker from reporting activity prohibited by Title VII, a plaintiff must satisfy the same standard that governs hostile workplace claims by showing that the incidents of harassment following complaints were sufficiently continuous and concerted to have altered the conditions of his employment."); *Faison v. Leonard St., LLC*, No. 08 Civ. 2192 (PKC), 2009 WL 636724, at *4 (S.D.N.Y. Mar. 9, 2009) (same); *McWhite v. New York City Hous. Auth.*, No. CV 0991(NG)(LB), 2008 WL 1699446, at *13 (E.D.N.Y. Apr. 10, 2008). Thus, a plaintiff must demonstrate that his workplace is "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000)

(quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)), and "[i]solated instances of harassment ordinarily do not rise to this level," *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000).

b. Analysis

i. Plaintiff's Retaliatory Failure to Re-Hire Claim

(1) Plaintiff's *Prima Facie* Case

In her complaint, plaintiff asserts that she was discharged in response to her protected activity under Title VII and the NYSHRL. (Pl's. Compl. ¶ 26, Mar. 27, 2009, ECF No. 1.) Plaintiff states that,

> [b]elieving that the pay discrepancy between [her] and [her] male counterparts [was] based on [her] gender, and that the disparity in pay between [her] and employees of other race[s] [was] motivated by [her] race and national origin, from January 2007 on, [she] complained on a number of occasions to Mr. Williams and Mr. Kapoor about the adverse treatment [she] suffered in wages, in overtime pay, and in accommodation."

(Zhengfang Aff. ¶ 25.) Plaintiff also states that, on May 18, 2007, she was terminated like most employees at the end of the season, but that she was told to return to work in August 2007 for the fall semester. (*Id.* ¶ 31.) Plaintiff claims that when she reported to work on August 28, 2007, she was told that she would not work at Jasmine anymore.[22] (*Id.* ¶ 35.) Plaintiff has therefore

---

[22]Plaintiff also alleges that defendants' failure to pay her hospital bill, as well as defendants' reduction of her work hours following her hospitalization, were actions taken against her in retaliation for her complaints. (Zhengfang Aff. ¶¶ 29-30.) However, plaintiff did not raise those claims in her complaint,

established the first three prongs of a *prima facie* case of retaliation: plaintiff has shown that (1) she engaged in protected activity, (2) defendants were aware of her protected activity, and (3) she was terminated from, or not re-hired for, her job.[23]

Regarding the fourth element of plaintiff's *prima facie* case, a causal connection between the protected activity and the adverse employment action can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *see also Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 1991) ("[T]he causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'" (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996))). Although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal

relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action[,]" *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001), "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line" for various district courts within this Circuit, *Cunningham v. Consol. Edison Inc.*, No. CV-03-3522 (CPS), 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) (collecting cases). However, because the Second Circuit has found periods well beyond two months sufficient to suggest a causal relationship under certain circumstances, courts must carefully consider the time lapse in light of the entire record. *See, e.g.*, *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (holding that eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship); *see also Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446-47 (2d Cir. 1999) (holding that abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53.

Here, plaintiff alleges that, from January 2007 on, she complained to her supervisors about the disparity in pay she experienced due to her race, national origin, and gender. (Zhengfang Aff. ¶ 25.) Plaintiff highlights the fact that her brother, Jerome, complained to defendants on her behalf, by letters dated April 9, 2007 and June 7, 2007, about defendants' failure to pay plaintiff minimum wage and overtime pay, and about defendants' failure to pay plaintiff's hospital bills. (*Id.* ¶¶ 29, 32.) Defendants argue that there is no causal connection between plaintiff's alleged protected activity and plaintiff's termination because the failure to

---

and they cannot be raised for the first time now. In any event, based on the record before the Court, the reduction of hours would have resulted in plaintiff making more money per hour.

[23] The Court has reviewed the letters submitted to defendants by plaintiff's brother, Jerome, on plaintiff's behalf, and concludes that the letters do not constitute protected activity under Title VII or the NYSHRL. In one letter, plaintiff's brother complains about defendants' failure to pay plaintiff minimum wage and informs defendants that he will forward them plaintiff's hospital bill. (Defs.' Ex. E, Apr. 9, 2007 Letter from Jerome Liang to Café Spice.) In the second letter, plaintiff's brother demands payment for plaintiff's hospital bill. (Defs.' Ex. F, June 7, 2007 Letter from Jerome Liang to Café Spice, July 13, 2010, ECF No. 18-2.)

22

re-hire plaintiff occurred in September 2007, approximately five months after Jerome's first complaint letter was written. (Fairlie Reply Aff. ¶ 32.)

As an initial matter, plaintiff alleges that she lodged complaints beginning in January 2007, and that she was informed that she would not be re-hired in August 2007. (Zhengfang Aff. ¶¶ 25, 35.) As the Second Circuit has explained, the time frame to establish a causal connection between protected activity and an alleged retaliatory act is not a bright line rule if there is a reasonable explanation in the record for the time gap. Here, because plaintiff was hired on a semester-by-semester basis, drawing all reasonable inferences in plaintiff's favor, defendants' discharge and failure to re-hire plaintiff is sufficiently close to establish an inference of retaliation. *See Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 230 (E.D.N.Y. 2010) (finding that a three-month gap was "not too temporally remote for a reasonable jury to infer causation" where, "[d]ue to the timing of the annual cycle for faculty promotions, [defendant's] non-recommendation in August represented her very first opportunity to weigh in on [plaintiff's] application for promotion"); *Barnabas v. Bd. of Trustees of the Univ. of D.C.*, 686 F. Supp. 2d 95, 105-06 (D.D.C. 2010) ("Generally, an approximately seven-month delay between protected activity and an adverse employment action does not suggest any causal connection between the two. But especially where a defendant retaliates at the first opportunity that is presented, a plaintiff will not be foreclosed from making out a prima facie case despite a substantial gap in time. . . . A reasonable jury could infer that [a] sudden change in a previously-consistent schedule, issued at the first opportunity the [defendant] had to reduce [plaintiff's] teaching load after she filed an EEOC complaint, was the result of retaliation." (citations and internal quotation

marks omitted)). Therefore, the Court finds that plaintiff has established a *prima facie* case of retaliation.

### (2) Defendants' Proffered Reason for the Termination

Defendants argue that plaintiff was terminated and not re-hired for a legitimate, non-discriminatory reason – namely, that plaintiff was terminated along with all employees at the end of the spring 2007 semester consistent with past practices, and that plaintiff was not re-hired for the fall 2007 semester due to projected budget and insufficient sales estimates for the fall. (Defs.' Reply at 8, Sept. 22, 2010, ECF No. 26.) However, plaintiff states that the dishwasher position that she previously held at Jasmine was not eliminated, that Jasmine looked for a new dishwasher, and that Jasmine hired a new employee to fill plaintiff's position. (Zhengfang Aff. ¶ 36.) Thus, there is a disputed issue of fact as to whether defendants' proffered reasons for terminating and not re-hiring plaintiff are a pretext for retaliation. As such, defendants' motion for summary judgment as to plaintiff's retaliation claim regarding defendants' failure to re-hire her is denied.

### ii. Plaintiff's Retaliatory Hostile Work Environment Claim

Plaintiff states that, after she complained to her supervisors in January 2007, she was placed under "close, constant surveillance," and that her supervisors "increasingly found faults with [her] and made unwarranted criticism of [her] work in front of other employees." (Zhengfang Aff. ¶ 26.) However, at her deposition, plaintiff testified that she received no criticism of her work, and that her supervisors were "very satisfied with [her] work." (Zhengfang Dep. at 31.) Where plaintiff's sworn deposition testimony clearly states that she received no

criticism of her work, the fact that plaintiff's later filed affidavit states the contrary does not create a disputed issue of fact as to this aspect of her retaliatory hostile work environment claim. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 455 (2d Cir. 1999) ("It is beyond cavil that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that . . . contradicts the affiant's previous deposition testimony." (internal quotation marks omitted)). In addition, the other conduct by defendants that plaintiff cites in support of her retaliatory hostile work environment claim does not rise to the level of a workplace "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Howley*, 217 F.3d at 153 (quoting *Harris*, 510 U.S. at 21). Thus, there is nothing in the record to support plaintiff's retaliatory hostile work environment claim. As such, defendants' motion for summary judgment with respect to plaintiff's hostile work environment claim is granted.

### D. Plaintiff's Intentional Infliction of Emotional Distress Claim

In order to assert a valid claim for intentional infliction of emotional distress under New York law, a plaintiff must demonstrate "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. N .Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993)). New York "sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Id.* The conduct alleged must be "'so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985) (quoting *Fischer v. Maloney*, 373 N.E.2d 1215, 1217 (N.Y. 1978)).

In her complaint, plaintiff asserts that defendants intentionally inflicted emotional distress upon her by retaliating against her after she complained to her supervisors about her pay. (Pl's. Compl. ¶¶ 14-15.) The Court, taking the allegations in plaintiff's complaint and the allegations in plaintiff's affidavit together, construes plaintiff's argument to be that defendants criticized her, [24] placed her under surveillance, and terminated her in retaliation for her complaints. [25] Even construing the facts surrounding this alleged retaliatory conduct in plaintiff's favor, the Court concludes that plaintiff has failed to sufficiently assert a claim for intentional infliction of emotional distress. Thus, based on the record before the Court, plaintiff's claim of intentional infliction of emotional distress must be dismissed. [26] *See, e.g.*, *Spence v. Md. Cas. Co.*, 995 F.2d 1147, 1158 (2d Cir. 1993) ("Defendants' criticisms of [plaintiff's] job performance and their conditional threats of

---

[24] As noted *supra*, plaintiff's allegation in her affidavit that her work was criticized is belied by her deposition testimony and does not create a disputed issue of fact on this point.

[25] With respect to plaintiff's claim that defendants failed to pay her hospital bill in retaliation, such conduct does not rise to the level required for a claim of intentional infliction of emotional distress.

[26] Though not raised by defendants, the Court notes that plaintiff's intentional infliction of emotional distress claim is also barred by the one-year statute of limitations for such a claim. *See Sharabura v. Taylor*, No. 03 CV 1866 (JG), 2003 WL 22170601, at *3 (E.D.N.Y. Sept. 16, 2003) ("The statute of limitations for a claim of intentional infliction of emotional distress is one year." (citing N.Y. C.P.L.R. § 215 (2003))).

termination . . . fall far short of the 'extreme' and 'outrageous' conduct that is actionable as an intentional infliction of emotional distress."); *Martin*, 762 F.2d at 220 (holding that allegations of being polygraphed on the basis of race is not outrageous per se "despite the unacceptability of racial discrimination in civilized society"); *Sharabura*, 2003 WL 22170601, at *3 (holding that plaintiff's allegations that her "employer criticized her unfairly, gave her undesirable assignments and ultimately terminated her" failed to meet "New York's high threshold for conduct that is actionable under the tort of intentional infliction of emotional distress"); *Lydeatte v. Bronx Overall Econ. Devel. Corp.*, No. 00CIV5433 (GBD), 2001 WL 180055, at *2 (S.D.N.Y. Feb. 22, 2001) ("Plaintiff alleges that defendant was biased against her based on her race, that she was harassed and treated poorly on the job, and that she was denied the same benefits, opportunities and conditions of employment as her Hispanic co-workers until she was ultimately wrongfully terminated. Additionally, plaintiff alleges that defendant retaliated against her . . . . While the alleged behavior of which plaintiff complains may support an employment discrimination lawsuit, it is not the type of behavior that merits recovery for intentional infliction of emotional distress as established by the New York Courts."); *Ruggiero v. Contemporary Shells, Inc.,* 160 A.D.2d 986, 987 (N.Y. App. Div. 1990) (dismissing IIED claim where the defendant allegedly "harassed and ultimately discharged the plaintiff due to her pregnancy").

To the extent plaintiff asserts that the confrontation in March 2007 that led to her hospitalization constituted intentional infliction of emotional distress, even assuming that plaintiff was "reprimanded publicly . . . for not finishing work in time and taking too long time break

between two meals," (Zhengfang Aff. ¶ 27), such conduct does not meet New York's high standard for a claim of intentional infliction of emotional distress. Therefore, the Court grants defendants' motion for summary judgment on this claim.[27]

### E. Plaintiff's Negligent Infliction of Emotional Distress Claim

A claim of negligent infliction of emotional distress "may only proceed where the allegations of conduct are 'so extreme in degree and outrageous in character as to go beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community.'" *Wilson v. City of N.Y.*, 294 A.D.2d 290, 295 (N.Y. App. Div. 2002) (quoting *Wolkstein v. Morgenstern*, 275 A.D.2d 635, 636-37 (N.Y. App. Div. 2000)). Moreover, "'[i]n the absence of contemporaneous or

---

[27] The Court notes that the fact that plaintiff did not oppose defendants' motion for summary judgment on her claim of intentional infliction of emotional distress is also adequate grounds for granting summary judgment in defendants' favor on this claim. *See Bellegar de Dussuau v. Blockbuster, Inc.*, No. 03 Civ. 6614 (WHP), 2006 WL 465374, at *7 (S.D.N.Y. Feb. 28, 2006) (granting summary judgment in favor of defendants on plaintiff's pregnancy discrimination claim because plaintiff did not oppose defendant's motion for summary judgment on the claim); *Taylor v. City of New York,* 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Arias v. NASDAQ/AMEX Mkt. Grp.,* No. 00 Civ. 9827(MBM), 2003 WL 354978, at *13 (S.D.N.Y. Feb. 18, 2003) (dismissing two of plaintiff's claims as "abandoned" where plaintiff's opposition papers "neither refute[d] nor even mention[ed]" defendant's argument for summary judgment on those claims); *see also* Local Civ. R. 7.1 ("[A]ll oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon . . . in opposition to the motion  . . . . Willful failure to comply with this rule may be deemed sufficient cause for the . . . granting of a motion by default.").

consequential physical injury, courts have been reluctant to permit recovery for negligently caused psychological trauma, with ensuing emotional harm alone.'" *Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, 425 F.3d 126, 137 (2d Cir. 2005) (quoting *Johnson v. State*, 37 N.Y.2d 378, 381 (1975)).

Plaintiff alleges that defendants negligently inflicted emotional distress upon her "in accommodation," presumably a reference to defendants' unisex bathroom. (Pl's. Compl. ¶ 32.) As noted *supra*, none of the alleged conduct by defendants rises to the level required for a claim of emotional distress. More specifically, the fact that defendants maintained a unisex bathroom with sexual drawings on the walls does not rise to the level of outrageous conduct required for a claim of emotional distress. Therefore, summary judgment is granted with respect to plaintiff's negligent infliction of emotional distress.[28]

## IV. Plaintiff's Motion For Sanctions

Plaintiff moves for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure on the grounds that: (1) defendants' reply motion and associated filings misrepresented plaintiff's deposition testimony and plaintiff's opposition papers; (2) defendants improperly submitted an affidavit without identifying the affiant as a witness, and two documents without providing information about those materials; (3) defendants manipulated or forged documents; (4) defendants made frivolous arguments without any basis in law or fact; and (5) defendants' reply was filed in bad faith. (Pl.'s Mot. for Sanctions at 1-2.)

---

[28] Alternatively, as stated *supra* note 27, summary judgment must be granted on the ground that plaintiff did not oppose defendants' motion with respect to this claim.

Having reviewed plaintiff's submissions and defendants' response to plaintiff's submissions, the Court finds that plaintiff's claims are without merit.

In considering a motion for sanctions under Rule 11, this Court applies an "objective standard of reasonableness." *See MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253, 1257 (2d Cir. 1996) ("In evaluating whether the signer of a filing has violated Rule 11, the district court applies an objective standard of reasonableness, examining whether, under the circumstances of a given case, the signed has conducted a 'reasonable inquiry' into the basis of a filing."). "[R]ule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) (internal quotation marks omitted). Additionally, "[w]hen divining the point at which an argument turns from merely losing to being *and* sanctionable, . . . courts [must] resolve all doubts in favor of the signer" of the pleading. *Rodick v. City of Schenetady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (emphasis in original) (internal quotation marks omitted).

Rule 37 of the Federal Rules of Civil Procedure provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders," including "striking [the disobeying party's] pleadings in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(iii). Moreover, "[i]nstead of or in addition to [the other sanctions permitted], the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure [to comply], unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* 37(b)(2)(C). Although Rule 37 does not set forth factors that courts should consider in determining whether to sanction

a noncompliant party, the Rule does instruct "that the sanctions must be 'just,' Fed. R. Civ. P. 37(b)(2)(A), meaning that 'the severity of the sanction must be commensurate with the non-compliance.'" *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 195 (E.D.N.Y. 2010) (quoting *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007)).

In determining whether to "exercise [] its broad discretion to order sanctions under Rule 37," a court may consider a number of factors, "including: (1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of his non-compliance." *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002). "[D]ismissal with prejudice is a harsh remedy to be used only in extreme situations and then only when a court finds willfulness, bad faith, or any fault on the part of the [noncompliant party]." *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990) (internal citation and quotation marks omitted). Noncompliance with a discovery order is considered willful "when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Davidson v. Dean*, 204 F.R.D. 251, 255 (S.D.N.Y. 2001) (citation omitted). Whether a party acted willfully, in bad faith, or with fault are questions of fact for the court. *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009).

As a preliminary matter, since plaintiff's motion for sanctions was filed, this Court has ruled "that defendants have complied with their discovery obligations" in all respects. (Order, Aug. 12, 2011, ECF No. 65.) To the extent plaintiff alleges that

Bhardwaj's affidavit is inadmissible because Bhardwaj was not listed as a potential witness in defendants' Rule 26(a) disclosure, as the defendants have noted, Bhardwaj's affidavit concerns the business operations of Jasmine, and not specific interactions with plaintiff. (*See* Fairlie Reply Aff. ¶ 13.) In addition, defendants note that Bhardwaj's identity was known to plaintiff through defendants' production of Jasmine's letter in response to plaintiff's NYSDHR complaint, which was signed by Bhardwaj. (*Id.* ¶ 19.) Finally, plaintiff had a full opportunity to respond to Bhardwaj's contentions and could have also sought to take Bhardwaj's deposition. Having considered all of these relevant factors, the Court, in its discretion, declines to strike the Bhardwaj affidavit. Moreover, the Court, having considered each of plaintiff's arguments, finds that all of plaintiff's other purported grounds for sanctions are similarly without merit, and plaintiff's motion for sanctions is thereby denied in its entirety.

V. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment with respect to all of plaintiff's claims, except for plaintiff's FLSA claim for unpaid wages and plaintiff's retaliation claim with respect to defendants' failure to re-hire her in violation of Title VII and the NYSHRL. Plaintiff's motion for sanctions is denied in its entirety.


SO ORDERED.


_____
JOSEPH F. BIANCO
United States District Judge

Dated: November 29, 2012
         Central Islip, NY


*  *  *

Plaintiff is proceeding *pro se*. The attorney for defendants is Darren H. Fairlie, Esq., Rider, Weiner & Frankel, P.C., 655 Little Britain Road, New Windsor, NY 12553.